## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

EVELYN JOHNSON,

Plaintiff,

v.

Civil Action No. 4:23-cv-40094-MRG

MARTIN O'MALLEY,
COMMISSIONER OF SOCIAL SECURITY

Defendant.

## <u>MEMORANDUM AND ORDER</u>

**GUZMAN, J.**

Plaintiff Evelyn Johnson ("Plaintiff" or "Johnson") filed this action appealing the denial of her application for disability benefits against Defendant Martin O'Malley,[1] Commissioner of Social Security ("Defendant" or the "Commissioner"). Johnson claims that she was improperly denied disability insurance benefits and supplemental security income, and that the decision of the presiding Administrative Law Judge ("ALJ") was erroneous and unsupported by substantial evidence. For the reasons that follow, the Commissioner's decision will be affirmed.

---

[1] Plaintiff's Complaint [ECF No. 1] names Kilolo Kijazaki, Acting Commissioner of the Social Security Administration, as the Defendant. All of Plaintiff's claims against Kijazaki relate to her role as the Acting Commissioner. On December 20, 2023, Martin O'Malley became the Social Security Administration's Commissioner. Accordingly, pursuant to Fed. R. Civ. P. 25(d), O'Malley is automatically substituted as a party in this action.

## I.     Background

### A.  Medical Evidence

Johnson was 56 years old at the time of her alleged onset date of June 12, 2019. On February 11, 2019, Johnson sought treatment at an urgent care facility for mid and lower back pain after tripping over a box and falling at work earlier that day. [Tr. 448-49].[2] Over the next few weeks, Johnson visited Shrewsbury Occupational Medicine at least three times. During her first visit on February 18, 2019, Johnson referred to physical therapy and was prescribed Flexeril and ibuprofen. [Tr. 454-55]. Johnson was also instructed to perform no work activities. [Tr. 455]. A week later, on February 25, 2019, Johnson reported improvement on her left leg, but noted pain in her lower back and difficulty to stand for short periods of time. [Tr. 456]. Once again, Johnson was instructed to perform no work activities and advised to continue taking Flexeril and trial a Medrol dose pak. [Tr. 458]. On March 4, 2019, Johnson reported that her back pain was slowly improving and that her leg pain had resolved. [Tr. 459]. Although she was instructed to continue using Flexeril and ibuprofen as needed, Johnson was told she could return to work in a light duty capacity. [Tr. 461].

On March 5, 2019, Johnson visited Greendale Physical Therapy in Worcester, where she was assessed with decreased trunk strength, impaired posture, decreased trunk AROM, and decreased functional mobility. [Tr. 465]. During the same visit, Johnson answered a questionnaire in which she rated her pain level a 7 on a 10 scale. [Tr. 467]. She also rated her pain intensity a 3 on a 5 scale, noting that "[p]ain medication provides me with moderate relief from pain." [Tr. 467].

---

[2] For ease of reference, the Court will refer to the administrative record [ECF No. 10] by the pagination provided by the Commissioner and as referred to by the Parties, and not the ECF pagination. However, the Court will refer to the Parties' briefings by their ECF pagination.

Johnson additionally rated her inability to perform daily activities on a 5 scale, expressing that pain prevented her from performing most tasks.[3]

On March 11, 2019, Johnson returned to Shrewsbury Occupational Medicine. She reported overall improvement, but still noted pain levels between a 5 to 7 range on a 10 scale. [Tr. 469]. Johnson was instructed to continue physical therapy and taking Flexeril and ibuprofen as needed. [Tr. 470]. At a follow-up appointment on March 25, 2019, Johnson stated she "has good and bad days," noting two instances in the previous two weeks in which she did not want to get up because she had a lot of pain. [Tr. 472]. That day, she rated her pain a 5 on a 10 scale and reported pain on her lower back and upper buttock. [Tr. 472]. Johnson was again instructed to continue physical therapy and taking Flexeril and ibuprofen as needed. [Tr. 473].

On April 4, 2019, Johnson returned to Greendale Physical Therapy, reporting a 50% improvement since starting physical therapy, including progress of 40% in her ability to perform daily tasks. [Tr. 476]. Although she rated her pain level a 5 on a 10 scale, Johnson stated that she could sit and stand for up to half an hour without pain. [Tr. 476]. An assessment demonstrated that Johnson made gains with respect to bilateral hip mobility and lower extremity strength, while still exhibiting tenderness in her lower back, as well as deficits in trunk strength. [Tr. 478].

On April 19, 2019, Johnson returned to Shrewsbury Occupational Medicine. [Tr. 483]. She noted that physical therapy had an overall effect but reported persistent pain that rose to a significant level when not using medication. [Tr. 484]. An evaluation of an MRI of Johnson's spine showed minor degenerative disc changes and fluid in facet joints. [Tr. 484]. As in prior

---

[3] For instance, Johnson rated: her inability to have employment or perform homemaking activities a 5, noting that "[p]ain prevents me from performing any job or homemaking chores"; her inability to lift a 5, noting that "I cannot lift or carry anything at all"; her inability to travel a 4, noting that "[m]y pain restricts my travel to short necessary journeys under 1/2 hour"; her inability to walk a 3, noting that "[p]ain prevents me from walking more than 1/4 mile;" and her inability to have a social life a 3, noting that "[p]ain prevents me from going out very often." [Tr. 467-68]. Although Johnson added that pain prevented her from sitting, standing, or managing her personal care, she only rated her inability to performing those activities a 2. [Tr. 467].

occasions, she was instructed to continue physical therapy and taking Flexeril and ibuprofen as needed. [Tr. 484].

A few days later, on April 22, 2019, Johnson consulted with orthopedic surgeon Dr. Thomas Kesman ("Dr. Kesman"). While he noted posterior lumbar tenderness and paraspinal muscle tenderness, he added that Johnson had no pain with internal or external rotation of the hips and rated her muscle strength a 5 on a 5 scale. [Tr. 487]. Upon review of Johnson's MRI, he noted an epidural lipomatosis and some mild facet arthrosis, as well as some fluid in the facets that he stated was likely physiological. [Tr.487]. Dr. Kesman opined that the epidural lipomatosis was mostly an incidental finding. [Tr. 487]. He also suspected that Johnson likely already had some mildly arthritic facets due to her hyperextension activity that flared up when Johnson hyperextended her back when she fell. [Tr. 487]. Dr. Kesman stated that Johnson should improve with time, recommending physical therapy, anti-inflammatories, and typical conservative treatment. [Tr. 487]. He added Johnson could consider facet injections and noted that there was otherwise no role for surgery in this situation. [Tr. 487].

When Johnson followed up at Shrewsbury Occupational Medicine a day later, she reported no change in condition since her last visit, stating she continued to have pain in her central lower back and that it was aggravated by activity. [Tr. 490]. About a week later, on May 1, 2019, Johnson consulted with Dr. Kevin Sullivan ("Dr. Sullivan") and rated her back pain intensity an 8 on a 10 scale. [Tr. 431]. She further reported that while she had noted some improvement with physical therapy, her symptoms had plateaued and worsen with sitting, standing, walking, and other physical activity. [Tr. 431]. Dr. Sullivan diagnosed her with lumbar spondylosis and acute bilateral low back pain without sciatica, recommending the steroid injection Dr. Kesman had previously suggested. [Tr. 433-34]. Johnson consented to receive the injection and scheduled an appointment

4

for the procedure about two weeks later. [Tr. 435]. Yet, when Johnson reported to physical therapy the next day, she stated that she felt a 50% improvement since starting her treatment, adding that she felt a 50% improvement in her ability to perform everyday tasks. [Tr. 493]. She also reported she could stand for 30 minutes, but continued to experience limitations with sitting and walking. [Tr. 493].

After Johnson was administered the steroid injection, she returned to Dr. Sullivan for a follow-up appointment on June 5, 2023. [Tr. 436]. Johnson reported she experienced significant improvement in her lower back pain for a few days after the steroid injection, followed by a period of severe intensity that then diminished to an intensity she rated a 6 on a 10 scale. [Tr. 437]. Still, Dr. Sullivan only referred her back to physical therapy, discussing with Johnson the importance of continued range of motion, movement, and exercise. [Tr. 437]. Dr. Sullivan noted that he would consider a second steroid injection if Johnson's pain symptoms worsened, and cleared Johnson for modified work capacity with a 10 pound lifting restriction and a part-time schedule. [Tr. 437].

On June 13, 2019, Johnson returned to physical therapy, reporting a 60% overall improvement since starting her treatment. [Tr. 498]. She also indicated she had been feeling better up until receiving the steroid injections in late May. [Tr. 498]. The physician indicated that Johnson showed little objective changes given her lack of participation in physical therapy in over a month. [Tr. 500]. During this visit, Johnson also completed another questionnaire, similar to the one she completed during her first physical therapy appointment, in which she rated her pain level an 8 on a 10 scale. She also rated her pain intensity a 2 on a 5 scale, noting that "[p]ain medication provides me with complete relief from pain." Moreover, Johnson rated her inability to perform daily activities on a 5 scale, demonstrating progress.[4]

---

[4] For instance, Johnson rated: her inability to have employment or perform homemaking activities a 2 on a 5 scale, noting that "I can perform most of my homemaking/job duties, but pain prevents me from performing more

A month later, on July 12, 2019, Johnson returned to Greendale Physical Therapy and reported a 70% overall improvement. [Tr. 505]. She stated that she was able to walk for half an hour and that she had been able to do more exercises at home than before, but still struggled with lifting. [Tr. 505]. The physician noted that Johnson showed improvements in lumbar range of motion and was able to perform physical therapy exercises with better ease, although she struggled with core endurance testing. [Tr. 507].

A few days later, on July 17, 2019, Johnson visited Dr. Sullivan for a follow-up appointment and reported improvement in her lower back pain. [Tr. 440]. Johnson also stated she had been practicing pushing a kitchen cart with fifty pounds on it, noticing some pain while doing this. [Tr. 440]. She stated that pain was intermittent and only occurred with activity that, at its worst, raised to a level of 6 on a 10 scale. [Tr. 440]. This progress continued over the next few weeks. When she returned to Dr. Sullivan on August 7, 2019, Johnson stated that she did not have any lower back pain and reported that it only intermittently appears when engaging in physical activity. [Tr. 442]. Dr. Sullivan, thus, cleared Johnson to return to her full work activities at the end of the month. [Tr. 443].

At her next physical therapy appointment on August 13, 2019, Johnson reported 90% overall improvement since starting her treatment. [Tr. 510]. She reported she could stand longer to cook and was able to walk for half an hour, stating "I still have pain[,] but I can tolerate it." [Tr. 510]. At the end of the assessment, the physician concluded that Johnson was showing good overall

---

physically stressful activities (e.g., lifting, vacuuming); her inability to lift a 4, noting that "I can lift only very light weights"; her inability to travel a 1, noting that "I can travel anywhere, but it increases my pain"; her inability to walk a 2, noting that "[p]ain prevents me from walking more than 1/2 mile"; and her inability to have a social life a 1, noting that "[m]y social life is normal, but it increases my level of pain." [Tr. 502-03]. Although Johnson noted that pain prevented her from sitting and standing, she only rated her inability to performing those activities a 2. [Tr. 502]. She also rated her ability to manage her personal care a 1, commenting "I can take care of myself normally, but it increases my pain." [Tr. 502].

improvement in her lumbar range of motion, as well as improved tolerance to daily activities. [Tr. 512].

In September 2019, Johnson reiterated a 90% overall improvement since starting physical therapy, noting that standing for over an hour increased pain. [Tr. 1294]. Johnson reported that she felt like the steroid injection was wearing off because she felt pain close to the site where it was administered. [Tr. 1294]. During this visit, Johnson again completed a questionnaire, rating her pain level a 6 on a 10 scale. [Tr. 1299]. She also rated her inability to perform daily activities on a scale of 5, demonstrating that she could perform most tasks with little to no pain.[5] [Tr. 1299-300].

In October 2019, Johnson consulted Dr. Edward F. Driscoll ("Dr. Driscoll"), reporting some lower back pain and no other specific complaints. [Tr. 1039]. Dr. Driscoll concluded that Johnson looked reasonably well, with no lower leg edema and a normal neurological examination, stating "I do not know what else to say about her back and if does not get better we will have to reconsidered various other work-ups." [Tr. 1039].

Several months later, on March 10, 2020, Johnson called Dr. Sullivan's office to schedule an appointment, stating that she had walked for about an hour a few days prior and was experiencing pain that prevented her from getting out of bed. [Tr. 1038]. Yet, at her appointment the next day, Dr. Sullivan noted that Johnson presented herself with some paperwork for him to fill out and that she "otherwise has no particular issues or complaints." [Tr. 1038]. Upon examination, Dr. Sullivan concluded Johnson looked reasonably well, she had no edema and no neurological deficits. [Tr. 1038]. A subsequent MRI revealed degenerative disc disease L3-4 and

---

[5] For instance, Johnson rated: her inability to stand a 2 and noted "[p]ain prevents me from standing more than 1 hour"; and her inability have employment or perform homemaking activities a 2 and noted "I can perform most of my homemaking/job duties, but pain prevents me from performing more physically stressful activities (e.g., lifting, vacuuming). [Tr. 1299]. She rated all other activities a 0 or a 1, including sitting, walking, lifting, managing her personal care, and her ability to have a social life. [Tr. 1299-300].

L4-5 with mild superimposed facet degenerative hypertrophic and mild minimal L3-4 and mild L4-5 neuroforaminal narrowing. [Tr. 1066].

In May 2020, Johnson consulted Dr. James Nairus ("Dr. Nairus"), and orthopedic surgeon, for an independent medical examination related to Johnson's workers' compensation claim. [Tr. 1545]. Johnson reported ongoing lower back pain. [Tr. 1547]. Despite this, Johnson stated that she could perform all her daily activities. [Tr. 1548]. Upon physical examination, Dr. Nairus noted that the Johnson walked with a slight limp and exhibited tenderness in the midline lumbar spine. [Tr. 1547-48]. She could flex her lumbar spine to sixty degrees and extend it to fifteen degrees, albeit with some discomfort. [Tr. 1548]. Neurological examination revealed intact bilateral lower extremities, full strength in all muscle groups, normal sensation, symmetric reflexes, and negative straight leg raise tests. [Tr. 1548]. Dr. Nairus diagnosed a lumbar spine strain, with chronic minor degenerative disc disease and spondylosis, offering a fair prognosis. [Tr. 1548]. He opined that Johnson's work injury temporarily exacerbated her preexisting degenerative lumbar spine condition and caused a lumbar spine strain. [Tr. 1548]. He also stated that her subjective symptoms appeared to be disproportionate to the objective findings. [Tr. 1548-49]. Dr. Nairus concluded that Johnson should be able to return to full-time work without restrictions, telling her to practice proper body mechanics, such as bending at the knees rather than the waist when lifting. [Tr. 1549].

In July 2020, the Johnson sought further treatment from Dr. Driscoll for lower back pain, and he observed that her condition had deteriorated enough that it prevented her from working. [Tr. 1550]. She returned to Dr. Driscoll in September 2020, reporting pain on palpation in the lumbar region, leading him to refer her to an orthopedic specialist. [Tr. 1550]. Dr. Driscoll otherwise noted that Johnson looked generally well and reported normal neurological responses. [Tr. 1550].

In October 2020, Johnson consulted neurosurgeon Dr. Farid Hamzei-Sichani ("Dr. Hamzei-Sichani"), reporting mild to moderate lower back pain without radicular symptoms. [Tr. 1647]. Dr. Hamzei-Sichani's examination revealed normal sensation, strength, reflexes, and gait, with no neurological deficits or cranial nerve issues, and a normal straight leg raise test. [Tr. 1650]. After reviewing Johnson's imaging results, Dr. Hamzei-Sichani determined there were no surgical indications and referred her to physical therapy and pain management. [Tr. 1651].

In February 2021, Johnson sought treatment from Dr. Sarvalakshmi Kurella ("Dr. Kurella"), reporting that she had been walking ten thousand steps per day for 105 consecutive days. [Tr. 1551]. She stated that her pain was under control but worsened with activity. [Tr. 1553]. Dr. Kurella referred Johnson to physical therapy. [Tr. 1553]. During a follow-up examination in April 2021, Johnson reported that she had not started physical therapy as she was awaiting approval of her workers' compensation claim. [Tr. 1555]. She also reported significant back pain while standing and cooking. [Tr. 1555]. A physical examination in May 2021 by Dr. Minjin K. Fromm ("Dr. Fromm") revealed that Johnson was not in apparent distress, had a normal gait, displayed discomfort with oblique extension of the lumbar spine, had full strength with intact sensation, and a normal straight leg raise bilaterally. [Tr. 1655]. She was diagnosed with facet arthritis of the lumbar region and myofascial pain, for which she was prescribed Flexeril. [Tr. 1655-56]. It was also determined that Johnson was a candidate for thoracic/lumbar trigger point injections. [Tr. 1656].

## B.  Medical Opinion Evidence

At the initial level for Johnson's disability determination, Dr. Henry Astarjian ("Dr. Astarjian"), a State-agency medical consultant, determined that Johnson was not disabled because she only had non-severe impairments of hypertension, diabetes, and obesity. [Tr. 90, 98].

Upon reconsideration, Dr. M. Douglass Poirier ("Dr. Poirer"), another State-agency medical consultant, found that the Johnson had severe impairments related to back-discogenic and degenerative disorders, in addition to obesity. [Tr. 113, 134]. He also found non-severe impairments of hypertension and diabetes. [Tr. 113, 134]. Dr. Poirier concluded that Johnson had the residual functional capacity to occasionally lift and/or carry fifty pounds and frequently lift and/or carry twenty-five pounds, to stand and/or walk for six hours in an eight-hour workday, to sit for a total of six hours in an eight-hour workday, to occasionally climb ladders, ropes, and scaffolds, and to occasionally balance, stoop, kneel, crouch, and crawl. [Tr. 114-16, 135-37].

Also at the reconsideration level, Dr. Joan Kellerman ("Dr. Kellerman"), a State-agency psychological consultant, found that Johnson did not have a medically determinable mental health impairment. Dr. Kellerman noted that there was no treatment or recommendation for treatment and no medical evidence of a psychiatric impairment. [Tr. 112, 133]. She further stated that there was "no information on the function report that is suggestive of limitations in basic work activities." [Tr. 112, 133].

In March 2020, Dr. Driscoll submitted a physical medical source statement in support of Johnson's disability claim. Dr. Driscoll reported that Johnson experienced pain on palpation and during flexion and extension. [Tr. 1027]. He opined that Johnson could walk or sit for twenty minutes at one time. [Tr. 1028]. He further stated that Johnson could only walk for a total of twenty minutes in an eight-hour workday and would need one ten-minute break every hour due to pain. [Tr. 1028]. Dr. Driscoll also opined that Johnson could frequently lift ten pounds but never lift twenty pounds or more. [Tr. 1029]. He indicated that Johnson could rarely stoop or climb stairs and could never crouch or climb ladders. [Tr. 1029]. Dr. Driscoll stated that Johnson would be off

task twenty-five percent or more of the time and was incapable of even "low-stress" work due to pain. [Tr. 1030].

### C.  Procedural Background

On March 25, 2020, Johnson filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act (the "Act"). On the same date, Johnson also filed an application for supplemental security income under Title XVI of the Act. Both applications were initially denied on June 12, 2020, and then on reconsideration on February 5, 2021.

Thereafter, Johnson filed a request for a hearing, which was granted and held by teleconference on January 5, 2020, before ALJ Ellen Parker Bush (the "ALJ"). Johnson was represented by counsel and an impartial vocational expert (the "VE") also appeared and testified at the hearing. On June 8, 2022, the ALJ found that Johnson was not disabled as defined in 42 U.S.C. §§ 416(i) and 423(d) (the "Decision"). The Appeals Council subsequently denied review on June 9, 2023. After exhausting all administrative remedies, Johnson timely filed the instant action.

### D.  Regulatory Framework

To obtain benefits under Section 223 of the Act,[6] an individual must demonstrate that she is unable "to engage in any substantial gainful activity by reason of any medically determinable

---

[6] As noted above, Johnson applied for disability insurance benefits as well as supplemental security income. Title XVI of the Act, which governs supplemental security income, uses the same definition of "disability" as employed in Title II of the Act, which governs disability insurance benefits. See 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). For ease of reference, this Court will only cite to the governing Title II regulations, but the analysis applies equally to Title XVI. Barnhart v. Thomas, 540 U.S. 20, 24 (2003).

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The impairment must be of such severity that the claimant is not only unable to continue her previous work but also unable to engage in other kinds of substantial work that exist in the national economy fitting her age, education and work experience. 42 U.S.C. § 423(d)(2)(A). To determine whether an individual is disabled, the ALJ evaluates whether 1) the claimant is engaging in "substantial gainful activity", 2) the claimant has a severe medically determinable impairment, 3) the impairment is equivalent to an impairment enumerated in the Code of Federal Regulations, 4) the claimant's residual functional capacity ("RFC") meets the requirements of her previous work and 5) the claimant can perform other work given her RFC, age, education and work experience. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v).

Furthermore, the ALJ must determine whether the claimant meets the insured status requirements of 42 U.S.C. §§ 416(i) and 423(c). Johnson's earning records showed that she acquired sufficient quarters of coverage to remain insured through December 31, 2025. Therefore, Johnson is required to establish disability on or before the date last insured to be entitled to a period of disability and disability insurance benefits. See 42 U.S.C. §§ 423(a)(1)(A) & (c)(1).

### E.  The ALJ's Decision

The ALJ found that Johnson was not disabled and therefore not entitled to disability insurance benefits and supplemental security income. The Decision was supported by documentary evidence and testimony from Johnson and the VE.

As a preliminary matter, the ALJ found that Johnson met the insured status requirements of the Act through December 31, 2025. [ECF No. 1-1 at 9]. At step one of the analysis, the ALJ found that Johnson had not engaged in "substantial gainful activity" since her alleged onset date.

[Id.]. At step two, the ALJ found that Johnson had the following severe impairments: 1) lumbar spondylosis and 2) obesity. [Id. at 9-10]. At step three, the ALJ found that Johnson did not have an impartment or combination of impairments that met or medically equaled the severity of any of the listed impairments in 20 C.F.R. pt. 4040, subpt. P, app. 1. [Id. at 10].

Before considering step four, the ALJ concluded that Johnson had the residual functional capacity ("RFC") to perform "medium work," as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), with exceptions. According to the ALJ, Johnson could occasionally climb stairs, ramps, ladders, ropes, and scaffolds, as well as occasionally balance, stoop, kneel, crouch, and crawl. [ECF No. 1-1 at 10-17]. The Decision explained that, in making this finding, the ALJ "considered all symptoms and the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence," as well as "the medical opinion[s] and prior administrative medical findings[s]" based on the applicable statutory requirements. [Id. at 10-11]. In this last respect, the ALJ found Dr. Driscoll's opinion unpersuasive because it was not only inconsistent with other examinations in the record, but also with Dr. Driscoll's own treating records. [Id. at 16-17]. The ALJ additionally found Dr. Astarjian's and Dr. Kellerman's opinions unpersuasive because they were inconsistent with the record. [Id. at 15-16].

Given Johnson's RFC, the ALJ found at step four that Johnson was capable of performing her previous work as a charge nurse, and therefore, Johnson was not disabled. [Id. at 17-18]. Although the ALJ determined that an analysis of step five was not required under the circumstances, the Decision provided alternative findings, concluding that Johnson could perform other jobs in the national economy. [Id. at 18-19]. The ALJ considered Johnson's age, education, work experience, and RFC in conjunction with the Medical-Vocational Guidelines, 20 C.F.R. pt.

404, subpt. P, app. 2. [Id. at 19]. Because Johnson could successfully adjust to other occupations, the ALJ found that Johnson was not disabled under the Act. [Id. at 20].

## II.   Social Security Disability Insurance Appeal

### A.  Legal Standard

The Act gives United States District Courts the power to affirm, modify or reverse an ALJ's decision or to remand the case for a rehearing. 42 U.S.C. § 405(g). A District Court's review of an ALJ decision is not, however, de novo. See Lizotte v. Sec'y of Health & Hum. Servs., 654 F.2d 127, 128 (1st Cir. 1981). The Act provides that the findings of the Commissioner are conclusive if 1) they are "supported by substantial evidence" and 2) the Commissioner has applied the correct legal standard. See 42 U.S.C. § 405(g); Seavey v. Barhart, 276 F.3d 1, 9 (1st Cir. 2001). If those criteria are satisfied, the Court must uphold the Commissioner's decision even if the record could justify a different conclusion. Evangelista v. Sec'y of Health & Hum. Servs., 826 F.2d 136, 144 (1st Cir. 1987). Substantial evidence means evidence "reasonably sufficient" to support the ALJ's conclusion. See Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 184 (1st Cir. 1998). In applying the substantial evidence standard, the Court must be mindful that it is the province of the ALJ to determine issues of credibility, resolve conflicts in the evidence, and draw conclusions from such evidence. Applebee v. Berryhill, 744 F. App'x 6 (1st Cir. 2018) (per curiam). Nonetheless, an ALJ may not ignore evidence, misapply the law, or judge matters entrusted to experts. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).

### B.  Application

Johnson asserts that the ALJ improperly discounted Dr. Driscoll's medical opinion, alleging that the ALJ failed to consider evidence that supported Dr. Driscoll's opinion that Johnson

had disabling limitations. [ECF No. 12 at 9-13]. The Commissioner argues that the ALJ's finding that Dr. Driscoll's opinion was unpersuasive is supported by substantial evidence. [ECF No. 15 at 10-14]. The Court agrees with the Commissioner.

In evaluating an application for benefits, the ALJ does not "defer or give any specific weight, including controlling weight, to any medical opinion(s)," including those from an individual's treating physician. 20 C.F.R. § 404.1520c(a). Instead, an ALJ is to consider the persuasiveness of a medical opinion by considering five factors: (i) supportability, (ii) consistency, (iii) relationship with the claimant, (iv) specialization of the medical source, and (v) other factors. 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). "The most important factors to be considered when the Commissioner evaluates persuasiveness are supportability and consistency; these are usually the only factors the ALJ is required to articulate." Harrison v. Saul, No. 20-10295-LTS, 2021 WL 1153028, at *5 (D. Mass. Mar. 26, 2021) (citation omitted); see 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). "An ALJ's decision to accord a treating physician's opinion with little weight will be sustained on review so long as one of the reasons given by the ALJ is proper and adequately supported." Id. at 6 (citing Gonzalez v. Astrue, No. 11-30201-KPN, 2012 WL 2914453, at *3 (D. Mass. July 5, 2012); Rodriguez v. Astrue, 694 F. Supp. 2d 36, 45 (D. Mass. 2010)).

According to the Decision, Dr. Driscoll opined that Johnson could sit and stand for only twenty minutes at a time and was restricted to standing or walking for less than two hours in an eight-hour workday. [ECF No. 1-1 at 16]. He added that she would require frequent position shifts, regular walking breaks throughout the day, and unscheduled rest periods during the workday. [Id.]. Additionally, he opined that Johnson could not lift or carry more than ten pounds, was unable to crouch or climb ladders, could rarely bend or climb stairs, and could occasionally twist. [Id.]. Dr.

Driscoll further concluded that Johnson would be off task for more than twenty-five percent of the workday and would be unable to perform even low-stress work. [Id.]. Dr. Driscoll based his opinion on Johnson's hypertension and chronic back pain, citing clinical findings of pain on palpation and pain with flexion and extension.

In assessing the persuasiveness of Dr. Driscoll's opinion, the ALJ considered it conjunction with the evidence of record, concluding that "the opinion is inconsistent with [Dr. Driscoll's own] treating records, … other examinations in the record" and "mild findings on imaging." [Id.]. The ALJ specifically noted several inconsistencies between Dr. Driscoll's opinion and the treatment record, including that: "[a]n examination on the day Dr. Driscoll completed the form showed she looked 'reasonably well,' without any neurological deficits and normal blood pressure"; "Dr. Driscoll continually noted that she looked well and he did not really know what to say about her back"; "a detailed examination around the time of the completion of this form showed midline tenderness in her lumbar spine, but she could flex to 60 degrees and extend to 15 degrees, while exhibiting some discomfort"; "[s]he had full strength in all muscle distributions, normal sensation in all dermatomes, normal reflexes, and negative straight leg raise"; "[s]he told the doctor that she could function around her house and perform all activities of daily living, to include cooking and laundry." [ECF No. 1-1 at 16-17].

Johnson asserts that the ALJ improperly ignored contemporaneous evidence supporting Dr. Driscoll's opinion that Johnson had severe limitations that rendered her disabled. She points to five specific treating events. To begin, Johnson asserts that on her July 31, 2020, visit to Dr. Driscoll (the "July 2020 visit"), he indicated that Johnson's back was "severely painful to put to the slightest touch" and that there was "radiation of the pain into both buttock areas," leading him to "certainly think she is doing poorly enough to prevent her from working again[.]" [Tr. 1550].

Second, on her September 11, 2020, follow-up visit to Dr. Driscoll (the "September 11, 2020 visit"), he noted that Johnson had "pain on palpitation throughout the lumbar region," "referring her to orthopedics for [] an official opinion regarding her back." [Tr. 1550]. Third, when Johnson presented to Dr. Hamzei-Sichani on September 21, 2020 (the "September 21, 2020 visit"), he gave "no surgical indications at this point," referring Johnson "to physical therapy and pain management." [Tr. 1651]. Fourth, during Johnson's February 25, 2021, visit to Dr. Kurella (the "February 2021 visit"), Johnson reported "mid back to lower back" pain, leading Dr. Kurella to refer her to physical therapy. [Tr. 1551, 1553]. And lastly, at her May 14, 2021, visit to Dr. Fromm (the "May 2021 visit"), Dr. Fromm indicated that Johnson exhibited discomfort with "[l]eft and right oblique extension of the lumbar spine," and that there was "tenderness to palpation of the lumbar paraspinals bilaterally." [Tr. 1655]. Dr. Fromm diagnosed Johnson with facet arthritis of lumbar region and myofascial pain. [Tr. 1655-56]. She prescribed Flexeril and noted that Johnson was "a candidate for thoracic/lumbar trigger point injections." [Tr. 1656].

The Court disagrees with Johnson's argument that the ALJ "cherry-picked" evidence and ignored these positive findings. Contrary to Johnson's argument, the ALJ considered much of the evidence to which Johnson points. Indeed, in concluding that Johnson had an RFC to perform medium work with certain limitations—the same step in the sequential analysis in which the ALJ assessed the persuasiveness of Dr. Driscoll's opinion—the ALJ expressly described the aforementioned five visits, citing precisely the same evidence Johnson now claims was ignored. For instance, with regard to the July 2020 visit, the ALJ explained that Dr. Driscoll "noted that on palpation, her back was severely painful and the pain radiated into both buttocks." [ECF No. 1-1 at 14]. The ALJ even quoted from Dr. Driscoll's treating records, indicating that he noted Johnson was "doing poorly enough to prevent her from working again." [Id.]. As to the September 11, 2020

visit, the ALJ described Dr. Driscoll's statements that he "noted pain on palpation in the lumber region," leading him to "refer[] her to orthopedics." [Id.]. The Decision similarly recounts the September 21, 2020 visit,[7] [id. ("She reported lower back pain without a radicular component … The doctor indicated there was no surgical indication[.]")]; the February 2021 visit, [id. at 14-15. ("The claimant returned for treatment in February 2021 with a new primary doctor, Dr. Kurella .... Her back pain was noted to be under 'much better control.'")]; and the May 2021 visit, [id. at 15. ("[T]he claimant exhibited … pain with extension of the lumbar spine, and tenderness to palpation of the lumbar paraspinals bilaterally. She was deemed a candidate for lumbar trigger point injections and physical therapy.")]. It is thus evident that the ALJ considered and weighed this evidence in evaluating Dr. Driscoll's opinion.

Things are not always what they seem. And in this instance, Johnson appears to ask the Court to reweigh the evidence. However, it is not for the Court to second-guess the ALJ's findings, as long as those findings are supported by substantial evidence. Nguyen, 172 F.3d at 35 ("The ALJ's findings of fact are conclusive when supported by substantial evidence[.]"); Rodriguez Pagan v. Sec'y Health & Hum. Servs., 819 F.2d 1, 3 (1st Cir. 1987) ("Although other medical evidence in the record conflicted with [the treating physician's] conclusions, the resolution of such conflicts in the evidence is for the Secretary. We must affirm … even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.").

Applying this deferential standard, the Court finds that substantial evidence supports the ALJ's conclusion that Dr. Driscoll's opinion was inconsistent with the evidence of record. For instance, on March 4, 2019, mere weeks after Johnson's fall, she reported that her back pain was

---

[7] The Decision mistakenly states that Johnson made this visit in October 2020. [ECF No. 1-1 at 14]. However, Dr. Hamzei-Sichani's treating records indicate that the visit occurred on September 21, 2020 and that Dr. Hamzei-Sichani signed the records on October 8, 2020. [Tr. 1649].

18

slowly improving and that her leg pain had resolved, leading the treating physician to conclude Johnson could return to work in a light duty capacity. [Tr. 459, 461]. Over the coming weeks, she continued to report overall improvement despite still noting pain. [Tr. 469]. Johnson's improvement was also evident in her physical therapy treatment records. When she began her treatment in March 2019, she rated her pain level a 7 on a 10 scale, indicating that pain significantly prevented her from performing daily activities. [Tr. 465, 467 ("Pain prevents me from performing any job or homemaking chores")]. The record shows that Johnson attended physical therapy at least 6 additional times between April and September 2019, reporting increased overall improvement after each visit. [Tr. 476, 493, 498, 505, 510, 1294]. Indeed, by her last appointment in September 2019, Johnson reported a 90% overall improvement since starting physical therapy. [Tr. 1294]. And while she still noted some pain, she indicated she could perform most of her daily activities. [Tr. 1300 ("I can perform most of my homemaking/job duties, but pain prevents me from performing more physically stressful activities (e.g., lifting, vacuuming).")].

Further, in April 2019, Dr. Kesman reviewed imaging results and noted an epidural lipomatosis and some mild face arthrosis. [Tr. 487]. Nonetheless, he ruled out surgery and concluded that Johnson would improve over time, recommending physical therapy, anti-inflammatories, and typical conservative treatment. [Tr. 487]. Later, in both July and August 2019, Johnson reported to Dr. Sullivan that her pain was intermittent, appearing only when engaging in physical activity, and that she had been practicing pushing a kitchen cart with fifty pounds on it. [Tr. 440-43]. And when Johnson reported some pain to Dr. Driscoll during her October 2019 visit, he concluded that Johnson looked reasonably well with normal neurological findings, stating "I do not know what else to say about her back[.]" [Tr. 1039].

19

Treating records from 2020 and 2021 also show the inconsistency in Dr. Driscoll's opinion. In May 2020, Johnson consulted with Dr. Nairus for an independent medical evaluation related to her workers' compensation claim. [Tr. 1545]. While Dr. Nairus diagnosed her with a lumbar spine strain, with chronic minor degenerative disc disease and spondylosis, he offered a fair prognosis, concluding that Johnson should be able to return to full-time work without restrictions. [Tr. 1548-49]. He also indicated that Johnson's subjective symptoms appeared to be disproportionate to the objective findings. [Tr. 1549-50].

Lastly, and perhaps most notably, the same treating records Johnson alleges were ignored support the ALJ's assessment of Dr. Driscoll's opinion. During the September 21, 2020 visit, Johnson reported mild to moderate lower back pain, but Dr. Hamzei-Sichani determined there were no surgical indications and ultimately referred Johnson to physical therapy and pain management. [Tr. 1647, 1651]. The February 2021 visit treating records also show that Johnson reported that her pain was "much better under control" and that she had been able to walk ten thousand steps per day for 105 consecutive days. [Tr. 1551, 1553]. Dr. Kurella also referred Johnson to physical therapy. [Tr. 1553]. And, at the May 2021 visit, while Dr. Fromm issued a diagnosis of facet arthritis and myofascial pain, she only prescribed Flexeril for temporary use, noting that Johnson would schedule thoracic/lumbar trigger point injections and physical therapy once she receives approval of her workers' compensation claim. [Tr. 1654-56].

In sum, the Court holds that the ALJ did not err in concluding that Dr. Driscoll's opinion was inconsistent with the examinations in the record, including Dr. Driscoll's own treating records. Because the ALJ's findings for discounting Dr. Driscoll's opinion are adequately supported by substantial evidence, the Court finds no error in the ALJ's consideration of the opinion evidence.

### III.    Conclusion

In accordance with the foregoing, Johnson's Motion for Summary Judgment [ECF No. 12]

is **DENIED** and the Commissioner's Motion to Affirm [ECF No. 15] is **GRANTED**.


**SO ORDERED.**


Dated: September 6, 2024

                                        */s/ Margaret R. Guzman*
                                        Margaret R. Guzman
                                        United States District Judge